IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DIANE GUSE,

               Plaintiff,

vs.                                  Case No. 15-1126-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

               Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).   At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On November 27, 2013, administrative law judge (ALJ) Susan W. Conyers issued her decision (R. at 12-22).  Plaintiff alleges that she had been disabled since September 9, 2011 (R. at 12). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2016 (R. at

4

14).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 14).  At step two, the ALJ found that plaintiff had a severe
combination of impairments (R. at 14).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 16).  After determining plaintiff's RFC
(R. at 17), the ALJ found at step four that plaintiff could
perform past relevant work as a customer service representative
and a telephone order clerk (R. at 22).  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err by failing to consider the medical opinion
that plaintiff should use a cane to ambulate?**

In her decision, the ALJ limited plaintiff to sedentary
work, indicating that plaintiff can occasionally climb ramps and
stairs, but should avoid climbing ladders, ropes and scaffolds.
She can occasionally balance and stoop, but should avoid
kneeling, crouching and crawling.  She should also avoid
unprotected heights and hazardous machinery.  She should avoid
concentrated exposure to extreme cold, heat, wetness and
vibration.  Finally, she will require a stool of no more than 12
inches in height at the workstation (R. at 17).  At step four,
the ALJ found that, based on the testimony of the vocational
expert, that plaintiff could perform past relevant work as a

customer service representative and telephone order clerk (R. at 22).

The only issue raised by plaintiff is that the ALJ erred because she failed to assess the impact of the medical recommendation that plaintiff required a cane for ambulation (Doc. 11 at 9). On October 28, 2013, Dr. Foster, a treating physician, stated that it is recommended by Dr. Foster and plaintiff's orthopedic physician that plaintiff use a cane to help with ambulation due to severe osteoarthritis in both of her knees (R. at 666). This report was not mentioned or discussed by the ALJ.

On March 25, 2013, Dr. Bruner, another treating physician, as part of his medical source statement-physical, opined that plaintiff required the use of a cane for ambulation or balance (R. at 550). On April 5, 2013, Timothy Barker, plaintiff's therapist, also opined that plaintiff required the use of a cane for ambulation or balance (R. at 578). Although the ALJ discussed the opinions of Dr. Bruner and Mr. Barker regarding plaintiff's physical limitations (R. at 21, giving little weight to these opinions), the ALJ did not mention their opinion that plaintiff required the use of a cane for ambulation or balance.

In her decision, the ALJ did state that plaintiff reported that she uses an ankle brace, and a cane for additional stability when walking (R. at 18). Furthermore, the ALJ gave

6

substantial weight to the opinions of Dr. Parsons, a non-

examining physician (R. at 20)s.  In his opinion, Dr. Parsons

noted that plaintiff indicates that she uses a cane when going

on a walk (R. at 96).  Defendant argues that the ALJ's reference

to plaintiff's report that she uses a cane, and the ALJ's

reliance on the opinion of Dr. Parsons, who noted that plaintiff

indicated she uses a cane, was sufficient consideration of

plaintiff's need for a cane when determining plaintiff's RFC.

    According to SSR 96-9p:

> Medically required hand-held assistive
> device: To find that a hand-held assistive
> device is medically required, there must be
> medical documentation establishing the need
> for a hand-held assistive device to aid in
> walking or standing, and describing the
> circumstances for which it is needed (i.e.,
> whether all the time, periodically, or only
> in certain situations; distance and terrain;
> and any other relevant information). The
> adjudicator must always consider the
> particular facts of a case. For example, if
> a medically required hand-held assistive
> device is needed only for prolonged
> ambulation, walking on uneven terrain, or
> ascending or descending slopes, the
> unskilled sedentary occupational base will
> not ordinarily be significantly eroded.

> Since most unskilled sedentary work requires
> only occasional lifting and carrying of
> light objects such as ledgers and files and
> a maximum lifting capacity for only 10
> pounds, an individual who uses a medically
> required hand-held assistive device in one
> hand may still have the ability to perform
> the minimal lifting and carrying
> requirements of many sedentary unskilled
> occupations with the other hand.[FN7] For

> example, an individual who must use a hand-
> held assistive device to aid in walking or
> standing because of an impairment that
> affects one lower extremity (e.g., an
> unstable knee), or to reduce pain when
> walking, who is limited to sedentary work
> because of the impairment affecting the
> lower extremity, and who has no other
> functional limitations or restrictions may
> still have the ability to make an adjustment
> to sedentary work that exists in significant
> numbers. **On the other hand, the occupational
> base for an individual who must use such a
> device for balance because of significant
> involvement of both lower extremities (e.g.,
> because of a neurological impairment) may be
> significantly eroded.**
>
> **In these situations, too, it may be
> especially useful to consult a vocational
> resource in order to make a judgment
> regarding the individual's ability to make
> an adjustment to other work**.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

The need to use an assistive device can be considered a manipulative limitation.  This requires an evaluation and a finding by the ALJ as to whether this non-exertional impairment was severe enough to preclude the claimant from performing a wide range of sedentary work.  Jones v. Astrue, 310 Fed. Appx. 286, 290 (10th Cir. Feb. 6, 2009)(plaintiff prescribed cane for full-time use to avoid falling); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

According to SSR 96-9p, as highlighted above, the occupational base for an individual who must use a hand-held assistive device because of significant involvement of both

lower extremities may be significantly eroded.  In these situations, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.  Dr. Foster stated that a cane is recommended because of severe osteoarthritis in both of her knees (R. at 666).  Dr. Bruner also noted severe arthritis in plaintiff's "knees" (R. at 549, emphasis added).

In the case of Staples v. Astrue, 329 Fed. Appx. 189 (10th Cir. May 19, 2009), the only issue raised by plaintiff was that the ALJ erred by failing to consider and incorporate her use of a cane into his determination of her RFC.  329 Fed. Appx. at 190.  In that case, the ALJ noted that plaintiff testified she walked with a cane, but further noted that a prescription for a cane was not found.  329 Fed. Appx. at 191.

The court stated that SSR 96-9p indicates that plaintiff only needed to present medical documentation of the need for the cane.  329 Fed. Appx. at 191-192.  The court stated that although one physician indicated that plaintiff still uses a cane to walk, there was no indication of medical necessity for the use of a cane.  In the absence of medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, the court found that the ALJ did not err by not considering and incorporating her use of a cane into his RFC findings pursuant to SSR 96-9p.  329 Fed. Appx. at 192.

In this case, a treating physician and plaintiff's treating therapist stated that a cane was required for ambulation or balance.  According to Dr. Foster, a cane was recommended to help with ambulation due to severe osteoarthritis in both of plaintiff's knees.  None of this was mentioned by the ALJ.  The ALJ only noted that plaintiff reported that she used a cane for stability when walking.  Likewise, Dr. Parsons, whose opinions were given substantial weight by the ALJ, only noted that plaintiff indicated that she uses a cane when walking.  Neither the ALJ nor Dr. Parsons mentioned the opinions of three treatment providers that a cane was required or recommended for ambulation and balance.  As <u>Staples</u> makes clear, SSR 96-9p is not triggered when there is no medical documentation establishing the need for a hand-held assistive device to aid in walking or standing.

However, SSR 96-9p is applicable when there is medical documentation establishing the need for a hand-held assistive device.  It goes on to state that when the device is needed because of significant involvement of both lower extremities, the occupational base for sedentary work may be significantly eroded, and that it would be especially useful to consult a vocational resource in order to make a judgment regarding plaintiff's ability to perform either past work or other work in the national economy.

10

In this case, three treating sources have opined that a cane was required or recommended to help plaintiff to ambulate or balance, and the medical source evidence further indicates that the device was needed to help with ambulation because of severe osteoarthritis in both of her knees.  When medical evidence requires the use of a cane for walking or balance because of significant involvement of both lower extremities, as exists in this case, the occupational base may be significantly eroded, and the ALJ should consult with a vocational expert in order to determine whether, in light of the need for a cane, plaintiff can perform past relevant work, or other work that exists in significant numbers in the national economy.  That did not occur in this case.  Therefore, the court finds that substantial evidence does not support the ALJ's RFC findings that plaintiff can perform past sedentary work.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of June 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge


11